United States District Court
Southern District of Texas
**ENTERED**
February 24, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| STROUD PRODUCTION, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:25-CV-03085 |
| | § | |
| DK TRADING & SUPPLY, LLC, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## ORDER

Pending before this Court is Defendant DK Trading & Supply, LLC's ("DKTS") Motion to Dismiss (Doc. No. 13). Plaintiff Stroud Production, LLC ("Stroud") filed a response, (Doc. No. 14), and DKTS filed a reply brief (Doc. No. 15). After close consideration of the pleadings and relevant legal standards, the Court hereby **DENIES** DKTS's Motion to Dismiss (Doc. No. 13).

### I.    Factual Background

This case arises from an alleged breach of contract. From 2015 through 2025, Stroud was the operator of the Kelly Bayou Jeter Field Wide Unit ("Kelly Unit") in Miller County, Arkansas. (Doc. No. 1 at 2). As part of that role, Stroud coordinated the sale and distribution of oil produced from the Kelly Unit. (*Id.*). In 2022, Stroud entered into an agreement with Lion Oil Trading and Transportation, LLC ("LOTT") for the month-to-month sale of oil production from the Kelly Unit (the "Agreement"). (*Id.* at Ex. A). Under the terms of the Agreement, Stroud would collect payment from LOTT and redistribute the amounts due to the oil and gas lease owners of the Kelly Unit. (*Id.* at Ex. B) (stating that "Stroud [] agrees to pay promptly to any person, or persons, entitled to any interest in the oil purchased by [LOTT]"). At some point after LOTT entered into this Agreement

with Stroud, LOTT merged with DKTS. (*Id.* at 2). DKTS, as the "surviving limited liability

company of such merger," continued to purchase oil under the terms of the Agreement. (*Id.*).

In June 2024, however, DKTS (and its agent, ExTex Land & Administration, LLC

("ExTex")) received notice from another company, J-Lu Ltd. Co. ("J-Lu"), that J-Lu had obtained

a valid and enforceable judgment from an Arkansas state court against Stroud. (*Id.* at Ex. K); *see*

*also J-Lu Ltd. Co. v. Ploutos, LLC*, No. 46CV-14-66-2, 2019 WL 13246815 (Ark. Cir. Dec. 10,

2019), *aff'd*, 688 S.W.3d 445 (Ark. App. 2024). J-Lu apparently provided a copy of the judgment

and requested that ExTex distribute any "ownership of funds . . . for the benefit of Stroud" directly

to J-Lu—instead of Stroud—for the satisfaction of the outstanding judgment. (*Id.* at Ex. K). From

this point on, DKTS (through ExTex) began to partially withhold payments from Stroud and

redirect the remainder of those payments to J-Lu. (*Id.* at 3–5) (detailing the amounts of partial

payments from June 2024 to January 2025).

In March 2025, Stroud provided written notice of "the failure to make timely payment of

proceeds from the sale of oil or gas production" to DKTS. (*Id.*) In that notice, Stroud stated:

> It is our understanding that the working interest revenue from the Kelly Bayou Field
> for this period of time, excluding $963.42 purportedly attributable to Sagely
> Investments, LLC, was paid to J-Lu Ltd. Co. ("J-Lu"). We understand that J-Lu
> presented a copy of a judgment against Stroud as the basis for redirecting these
> payments. However, no garnishment issued, and there was no legal basis for paying
> these proceeds to J-Lu. That these proceeds were redirected in error was
> acknowledged by the payment, in February 2025, to Stroud of proceeds of January
> 2025 sales. Further, money held at the agent for another cannot be reached by
> garnishment proceedings. Stroud is the operator but has no interest in the field: it
> pays all proceeds from the sale of production to the interest owners.

(*Id.*). Stroud represented that "[t]he failure of DKTS to make timely payment of proceeds has

resulted in production in the Kelly Bayou Fieldwide Unit being shut in since January 4, 2025, due

to lack of funds for necessary work on the saltwater disposal well." (*Id.*). Stroud requested DKTS

to "remit payment of $137,977.69, together with interest at 12% per annum on the unpaid amount from the due date to date of payment." (*Id.*).

In April 2025, DKTS responded to the written notice. (*Id.* at Ex. K). DKTS stated:

> On or about June 13, 2024, J-Lu Ltd. Co., by and through its legal counsel, contacted ExTex, not [DKTS], and provided them with the Judgment, Arkansas Court of Appeals Opinion and Mandate related to its lawsuit with Stroud. J-Lu further requested that it's [*sic*] "ownership of funds held by ExTex, for the benefit of Stroud Production" be distributed to them. ExTex, not [DKTS], then proceeded to direct the payment to J-Lu.

(*Id.*). DKTS also stated that it had contacted J-Lu and "requested it return the money that was directed to them by ExTex." (*Id.*). Stroud alleges that such repayment never occurred. (*Id.* at 5).

On July 2, 2025, Stroud filed this lawsuit, pursuant to a forum selection clause in the agreement between Stroud and DKTS. (Doc. No. 1 at Ex. A) ("Both parties submit to the exclusive jurisdiction of the federal or state courts located in Houston, Harris County, State of Texas . . . ."). Stroud brought two causes of action against DKTS: breach of contract and the failure to pay proceeds from sale of oil or gas in violation of Arkansas Code § 15-74-601(a).

Nevertheless, one month after Stroud filed this lawsuit against DKTS, J-Lu and DKTS filed a "Stipulation of Partial Satisfaction of and Partial Release from Judgment" in the Arkansas state court action. (Doc. No. 13-1). The Stipulation states that the amount that DKTS withheld from Stroud and redirected to J-Lu "satisfied $137,977.69 of the judgment that J-Lu obtained against Stroud" and that "J-Lu hereby releases Stroud from 137,977.69 of the judgment obtained against it in this action." (*Id.*). Based on this Stipulation, DKTS filed a Motion to Dismiss the action in this Court under Federal Rule of Procedure 12(b)(1) and 12(b)(6). (Doc. No. 13). DKTS contends that Stroud has no standing to bring this lawsuit because it has no damages and no injury, as the money DKTS paid J-Lu ultimately released Stroud from the state court judgment in the exact same amount. The Court addresses the Motion to Dismiss below.

## II.    Legal Standards

Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A federal court has original jurisdiction to hear a suit when it is asked to adjudicate a case or controversy that arises under federal-question or diversity jurisdiction. U.S. CONST. art. III § 2, cl. 1; 28 U.S.C. §§ 1331-32. Whether a federal court has jurisdiction must "be established as a threshold matter" and "is inflexible and without exception." *Webb v. Davis*, 940 F.3d 892, 896 (5th Cir. 2019) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)). A Rule 12(b)(1) motion to dismiss allows a party to challenge the exercise of the Court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). In analyzing a motion to dismiss under Rule 12(b)(1), a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts or evidence in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Plaintiff, as the party asserting jurisdiction, bears the burden of proof to defeat a Rule 12(b)(1) motion to dismiss. *Id.* Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish Article III standing, "a plaintiff must show: (i) that [he] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan*, 504 U.S. at 560-61). "As the party invoking federal jurisdiction," Plaintiff "bear[s] the burden of demonstrating" standing to bring the claims alleged. *Id.* at 2207.

A defendant may also file a motion to dismiss a complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

### III.    Analysis

As discussed above, Stroud brought two claims against DKTS for breach of contract and failure to pay proceeds from the sale of oil and gas in violation of Arkansas Code § 15-74-601(a). (Doc. No. 1). DKTS filed a Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss (Doc. No. 13) requesting the Court to dismiss both claims. DKTS primarily argues that Stroud has no standing to bring this lawsuit because Stroud has not suffered any injury that could be redressed by judicial

relief. Second, DKTS argues that even if Stroud has standing to bring the lawsuit, Stroud has failed

to state a claim for breach of contract and/or the violation of Arkansas Code because the Complaint

does not sufficiently allege that Stroud suffered any damages. The Court separately addresses each

of these arguments.

### A. Rule 12(b)(1) Lack of Standing

DKTS argues that Stroud lacks Article III standing to bring this lawsuit because it has not

suffered a redressable injury. DKTS relies on the following sequence of events:

- On December 10, 2019, J-Lu obtained a judgment against Stroud in Arkansas state court. *See J-Lu Ltd. Co. v. Ploutos, LLC*, No. 46CV-14-66-2, 2019 WL 13246815 (Ark. Cir. Dec. 10, 2019).

- On April 10, 2024, the trial court judgment was affirmed by the Court of Appeals of Arkansas. *Stroud Production, LLC v. J-Lu Ltd. Co.*, 688 S.W.3d 445 (Ark. App. 2024).

- In June 2024, J-Lu reached out to DKTS (through its agent, ExTex) and requested that DKTS redistribute any "ownership of funds . . . for the benefit of Stroud Production" to J-Lu due to the valid and enforceable state court judgment. (Doc. No. 1 at Ex. K).

- Instead of completing full payments for oil produced from the Kelly Unit under the terms of the Agreement with Stroud, (Doc. No. 1 at Ex. A), DKTS partially withheld payment from Stroud and redistributed $137,977.69 to J-Lu. (Doc. No. 13-1).

- J-Lu and DKTS filed a stipulation in Arkansas state court that the payments "satisfied $137,977.69 of the judgment that J-Lu obtained against Stroud" and that "J-Lu hereby releases Stroud from 137,977.69 of the judgment obtained against it in this action." (*Id.*).

DKTS argues that because the $137,977.69 (the exact amount that Stroud seeks in this

lawsuit) withheld from Stroud ultimately released Stroud from the exact same amount of the

Arkansas state court judgment, Stroud received the benefit of the payment and has not suffered

any injury. In other words, DKTS contends that it has paid the money it owed under the Agreement

with Stroud (albeit, to J-Lu), and Stroud has indirectly received that payment through the partial

release of the state court judgment. Therefore, as DKTS reasons in its briefing, Stroud has not

suffered any injury and consequently has no standing to bring this lawsuit.

On the other hand, Stroud argues that J-Lu was unauthorized by law (*i.e.*, a writ of garnishment) to receive any payment from DKTS on behalf of Stroud, and therefore, DKTS still owes $137,977.69 (plus interest) directly to Stroud. Under Arkansas law,[1] "[a] writ of garnishment is a suit directed to a third party to determine whether the third party possesses property of the judgment debtor." *J.B. Hunt, LLC v. Thornton*, 432 S.W.3d 8, 12 (Ark. 2014). "The effect of the service of a writ of garnishment is to impound all property in the hands of the third-party garnishee that belongs to the judgment debtor at the time of the service." *Id.* While Stroud does not dispute the timeline of the facts presented by DKTS, Stroud argues that without a writ of garnishment, J-Lu and DKTS had no legal authority to redirect funds owed to Stroud to J-Lu.[2]

The Fifth Circuit was faced with a similar factual scenario (applying Texas law) in *Matter of Russell*, 941 F.3d 199 (5th Cir. 2019). In *Matter of Russell*, divorce proceedings resulted in an arbitration judgment against the ex-husband. *Id.* at 202. After the ex-wife parted ways with her divorce attorney, the attorney directly contacted the ex-husband and requested that he distribute the arbitration award directly to her (the lawyer) in order to satisfy the ex-wife's unpaid attorneys'

---

[1] While the Court reserves any determination about which state law to apply to this dispute, the Court finds that Arkansas state law undeniably applies to the underlying Arkansas state court judgment, as any writ of garnishment would have been issued by the same Arkansas state court. *Equifax, Inc. v. Luster*, 463 F. Supp. 352, 364 (E.D. Ark. 1978) ("In the case of judgments rendered by circuit courts in Arkansas, only the court rending the judgment has jurisdiction to issue a writ of garnishment.").

[2] Stroud also argues that even if J-Lu had sought a writ of garnishment from the Arkansas state court, the funds owed to Stroud from DKTS could not be subject to the garnishment because Stroud "has no interest in the Kelly [] Unit" and only held the "funds for the benefit of the interest owners." (Doc. No. 14 at 16) (citing *Home Land & Loan Co. v. Routh*, 185 S.W. 467, 469 (Ark. 1916) ("A judgment creditor cannot have the debt satisfied out of property held in trust for another, no matter how completely his debtor may have exercised apparent ownership over it, unless it was upon the faith of such ownership that the credit was given.")). The Court need not reach determination of whether the funds could have been reached by a writ of garnishment and nevertheless finds that Stroud has pleaded sufficient facts to demonstrate Article III standing.

fees. *Id.* The ex-husband directly paid the award to the ex-wife's former attorney, and the attorney accepted that amount as the ex-wife's attorneys' fees. *Id.* Despite this payment, the Fifth Circuit held that while the ex-wife may have "got the benefit of the money" when the attorneys' fees bill was paid, her attorney did not have any authority to reroute the arbitration award for the payment of attorneys' fees. *Id.* at 204. Therefore, as a matter of law, the ex-husband had not extinguished his financial obligation to the ex-wife and still owed the arbitration award. *Id.* at 206.[3]

While this case involves a final judgment in Arkansas state court (as opposed to the disputed amount in attorneys' fees in *Matter of Russell*), the "benefit of the money" contention may not overcome the fact that J-Lu and DKTS allegedly did not have the legal authority (from Stroud or the judgment-rendering state court) to redistribute the payments owed to Stroud. Even though J-Lu stipulated that it has released Stroud from the $137,977.69 (much like the attorneys' fees in *Matter of Russell*), DKTS does not dispute that it never paid that amount to Stroud under the terms of the Agreement and may still be under legal obligation to do so.

With those arguments set out, the Court notes that the Fifth Circuit has adopted the "general rule" that "resolution of the jurisdictional issue on a 12(b)(1) motion [is] improper" where the jurisdictional attack is "intertwined with the merits of [a] claim." *Pickett v. Texas Tech Univ. Health Sciences Ctr.*, 37 F.4th 1013, 1030 (5th Cir. 2022). Nevertheless, "this procedural posture requires [courts] to consider only whether [Stroud] has plausibly pleaded a claim for which the federal courts have subject-matter jurisdiction." *Id.* at 1020. The Court finds that Stroud has sufficiently alleged that DKTS is still under legal obligation to directly satisfy the unpaid amount under the Agreement despite the partial satisfaction of the state court judgment. Therefore, the Court finds

---

[3] The discussion of this Fifth Circuit precedent should not be construed as a choice-of-law determination. Nevertheless, the Court uses this case as persuasive authority to address the DKTS's argument that Stroud lacks standing to bring this lawsuit.

Stroud has sufficiently pleaded that the injury-in-fact is the unpaid amount of $137,977.69 for the sale of oil produced from the Kelly Unit and sufficiently shown that it has Article III standing to bring both claims against DKTS in this Court.

**B. Rule 12(b)(6) Failure to State a Claim**

DKTS also argues that Stroud failed to state both the claims for breach of contract and violation of Arkansas Code. Largely similar to its Rule 12(b)(1) argument, DKTS contends that Stroud failed to sufficiently plead that it suffered any damage due to the alleged conduct. DKTS also argues that Stroud has failed to state a claim for the violation of Arkansas Code because Texas law must apply to this dispute. The Court addresses each of these arguments, in turn.

**1. Damages**

DKTS argues that Stroud has failed to state a claim for breach of contract or failure to pay proceeds from sale of oil or gas in violation of Arkansas Code § 15-74-601(a) because damages is a required element of both claims. *See Cross v. Bank of New York Mellon*, No. CV H-18-2274, 2019 WL 13256139, at *2 (S.D. Tex. June 17, 2019) (holding that a plaintiff has failed to state a breach of contract claim when it "has not alleged any actual damages resulting from any breach"); Ark. Code § 15-74-601 (creating a statutory right to receive proceeds derived from the sale of oil or gas production "no later than six (6) months after the date of first sale"). Based on the same arguments above, DKTS contends that its payment to J-Lu and the subsequent stipulation that J-Lu used that payment to partially release Stroud from the state court judgment demonstrates that Stroud did not suffer any damage from the alleged missed payments.

Nevertheless, as the Court discussed above, the Court finds that Stroud alleged sufficient facts to demonstrate damage from unpaid amount of $137,977.69 for the sale of oil produced from the Kelly Unit. In addition to the unpaid amount of $137,977.69, Stroud has also alleged that the

9

violation of Arkansas Code § 15-74-601 entitles Stroud to 12% interest per annum on the nonpaid

amounts and a penalty of at the rate of 14% interest per annum for any willful violations of the

statute. *See* (Doc. No. 1) (citing Ark. Code §§ 15-74-601(e), 15-74-603). Therefore, the Court finds

that Stroud has pleaded sufficient facts to support the element for damages on each of its claims

against DKTS.

### 2. Choice of Law

Lastly, DKTS argues that Stroud has failed to state a claim for the violation of Arkansas Code

because Texas law must apply to this litigation. DKTS invokes the choice-of-law provision in the

Agreement between Stroud and DKTS. The Agreement states: "[t]his Agreement, and all disputes

arising out of or in connection with, associated with, or related thereto shall be governed by,

interpreted, construed and enforced in accordance with the laws of the State of Texas without

regard to principles of conflicts of laws." (Doc. No. 1 at 11). DKTS contends that under the plain

terms of the Agreement, Stroud cannot state a claim under Arkansas law.

In response, Stroud argues that the well-established Texas choice-of-law principles favor the

application of Arkansas law to this Agreement, as "Arkansas has a more significant relationship

with the parties and this transaction than Texas does," "Arkansas has a materially greater interest

than Texas in applying its law to this set of facts," and "applying Texas law would be contrary to

a fundamental police of the State of Arkansas." (Doc. No. 14 at 19) (citing *Cannon Oil and Gas

Well Servs. v. KLX Energy Servs.*, 20 F.4th 184 (5th Cir. 2021)). While the parties do present some

choice-of-law analysis in the briefing, the Court finds that reaching a determination of whether

Texas or Arkansas law applies to this Agreement will require factual discovery and briefing on the

merits. *See VTX Comms. v. AT&T Inc.*, No. 7:19-CV-00269, 2020 WL 4465968, at *3 (S.D. Tex.

Aug. 4, 2020) ("Choice-of-law decisions can be resolved at the motion to dismiss stage when

factual development is not necessary to resolve the inquiry."). Therefore, the Court denies the

Motion to Dismiss (Doc. No. 13) on the basis of Federal Rule of Civil Procedure 12(b)(6).

### IV.    Conclusion

For the foregoing reasons, the Court hereby **DENIES** DKTS's Motion to Dismiss (Doc.

No. 13).

It is so ordered.

Signed on this the ___24___ day of February 2026.

Andrew S. Hanen
United States District Judge